**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

BRITNEY SCHMIDT,

Plaintiff,

v. 3:26-cv-01301 (AMN/ML)

CORNELL UNIVERSITY,

Defendant.

---

**APPEARANCES:** **OF COUNSEL:**

**NESENOFF & MILTENBERG, LLP**
363 Seventh Avenue
5th Floor
New York, New York 10001
*Attorneys for Plaintiff*

**ANDREW MILTENBERG, ESQ.**
**GABRIELLE M. VINCI, ESQ.**

**MILLER, CANFIELD, PADDOCK AND STONE, PLC**
123 W. Allegan St., Ste. 200
Lansing, Michigan 48933
*Attorneys for Defendant*

**CONRAD R. WOLAN, ESQ.**
**FRANCES J. HOLLANDER, ESQ.**

**Hon. Anne M. Nardacci, United States District Judge:**

## MEMORANDUM-DECISION & ORDER

## I. INTRODUCTION

On June 26, 2026, plaintiff Dr. Britney Schmidt ("Plaintiff") filed a complaint against Cornell University ("Defendant" or "Cornell") alleging violations of Section 504 of the Rehabilitation Act, 29 U.S.C. § 794 ("Section 504") and the New York State Human Rights Law ("NYSHRL"), and breach of contract. *See* Dkt. No. 1 ("Complaint").

On June 29, 2026, Plaintiff filed a motion requesting a temporary restraining order and preliminary injunction that, among other things, requires Defendant to reinstate Plaintiff to her

position in good standing as a professor at Cornell and to engage with Plaintiff to identify disability accommodations that will allow her to participate in the ongoing adjudicative process relating to her conduct. *See* Dkt. No. 4 ("Motion"). On July 8, 2026, the parties submitted a stipulation to stay these proceedings pending mediation, Dkt. No. 9, which the Court granted, Dkt. No. 10. Following mediation, Defendant submitted a response on September 2, 2026, Dkt. No. 17, and an Answer to the Complaint on September 14, 2026, Dkt. No. 23. Plaintiff filed a reply in support of her Motion on September 22, 2026. Dkt. No. 30. The Court held a hearing regarding the availability of preliminary injunctive relief on September 29, 2026 (the "Hearing").

For the following reasons, Plaintiff's Motion is denied.

## II. BACKGROUND

### A. The Parties

Plaintiff is an earth & planetary scientist and astrobiologist whose research entails conducting polar field expeditions to locations including Greenland, Antarctica, and the High Arctic. Dkt. No. 4-4 at 6.[1] She has been employed by Cornell University since 2021, first as an Associate Professor of astronomy, earth, and atmospheric sciences, and as a full professor since 2025. *Id.* Plaintiff alleges that she was diagnosed with Post Traumatic Stress Disorder ("PTSD") following a traumatic incident in a 2014 field expedition. *Id.* She further alleges that Cornell and members of Plaintiff's research team were "made aware of her disability" at some point, and that she has "always declared the condition on field paperwork" since at least 2015. Dkt. No. 1 at ¶ 26.

[1] Citations referring to court documents utilize the pagination generated by CM/ECF, the Court's electronic filing system, and not the documents' internal pagination.

Defendant is an Ivy League university that operates programs funded by federal land grant programs and awards doctoral degrees in specific fields. Dkt. No. 23 at ¶ 2. Defendant maintains its principal place of business in Ithaca, New York. *Id.*

**B. Factual Background**

In or around late 2025, Plaintiff alleges that she met and befriended an individual, non-party John Doe, while on a cruise. Dkt. No. 4-4 at 6. Plaintiff told Doe about an upcoming research expedition to Greenland (the "Expedition") and informed him of a vacant role on her research team. *Id.* at 6-7. Doe expressed interest, and Plaintiff thereafter arranged for him to join the Expedition as a temporary Cornell employee. *Id.* at 7.

The Expedition, which Plaintiff organized through Cornell and in conjunction with NASA and the National Science Foundation ("NSF"), began in early March 2026. *Id.* Plaintiff alleges that, during the Expedition, she experienced a "triggering event" and subsequent episode of PTSD symptoms, which did not abate until the morning of March 21, 2026. *Id.* at 7-8. Plaintiff alleges that, due to her PTSD episode, she cannot remember most of the events between the evening of March 19, 2026 and the morning of March 21, 2026. *Id.* at 7.

Thereafter, Cornell received a complaint from an undisclosed member of Plaintiff's research team. *Id.* at 8. This complaint led Cornell to conduct concurrent investigations into Plaintiff's conduct on the Expedition, the first of which addressed allegations that Plaintiff had consumed alcohol to excess, behaved aggressively with team members who expressed concern about her alcohol use, and mishandled a firearm on at least two occasions;[2] and the second of

[2] The Expedition apparently required certain members of the research team to handle and travel with rifles in case of polar bear encounters; Plaintiff was accused of mishandling these rifles. *See* Dkt. No. 4-4 at 8; Dkt. No. 17 at 8.

which addressed allegations that Plaintiff sexually harassed John Doe. Dkt. No. 17 at 9; *see* Dkt. No. 17-2 at ¶¶ 8, 10-11.

Cornell allegedly consulted the third-party organizations involved with the Expedition, and on March 28, 2026, Dean Lynden Archer of Cornell's David A. Duffield College of Engineering informed Plaintiff that she was being placed on administrative leave pending investigation and directed Plaintiff to return to New York, which she did on April 3, 2026. Dkt. No. 4-4 at 9-10. Thereafter, Plaintiff alleges that she was given the option to instead take medical leave, which she was in the process of requesting when an unidentified representative from Cornell advised her "to instead take the administrative leave," and that she "could switch to medical leave if or when needed." Dkt. No. 1 at ¶ 89.

On March 30, 2026, prior to returning to New York, Plaintiff formally requested that Cornell reconsider its determination to place her on administrative leave; her request asked that investigators consider her disability, as well as recommendations received from a third-party organization involved with the Expedition and from Plaintiff's own medical providers regarding how to manage the investigation. Dkt. No. 4-4 at 11. Plaintiff further requested that Cornell arrange for a return-to-work evaluation and support from a provider experienced in PTSD. *Id.* Plaintiff further requested permission to remain in Greenland and complete the Expedition in accordance with a safety plan allegedly formulated by NASA; Defendant denied this request. *Id.*

Following Plaintiff's return to New York, Cornell investigated the allegations against Plaintiff. As part of the investigation, Dean Peter John Loewen, Dean of Cornell's College of Arts and Sciences, interviewed Plaintiff on April 23, 2026. *Id.* at 12. Plaintiff contends that she received a Notice of Formal Complaint accusing her of violating Cornell's internal policies, but no additional details regarding the complaint, prior to the interview. *Id.* at 11-12. Plaintiff further

alleges that Dean Loewen "prohibited Plaintiff from attending the interview with her legal counsel," Dkt. No. 4-4 at 12, and that no one from Cornell spoke with her regarding accommodations to facilitate her participation in the investigation, Dkt. No. 1 at ¶ 123.[3] Plaintiff alleges that she "requested that Dean Loewen take her disorder into consideration and how it affected her in the field on this isolated incident." Dkt. No. 4-4 at 12.

On April 30, 2026, Christie White, a Title IX investigator from Cornell's Office of Civil Rights ("Cornell OCR"), interviewed Plaintiff. *Id.* at 13. Plaintiff was accompanied by her legal counsel during this interview. *Id.* She further alleges that "accommodations were not discussed or provided to Plaintiff during this meeting."[4] *Id.*

Cornell investigators ultimately issued a finding of responsibility against Plaintiff in both investigations. *Id.* at 15. Cornell administrators recommended disciplinary sanctions, including a five-month unpaid suspension, during which she would be prohibited from entering campus, communicating with Cornell staff or students, performing her duties or representing to others that she is doing so, or accessing research funds; as well as future restrictions on her ability to consume alcohol, to hire, fire, or supervise Cornell staff, and to advise graduate students. Dkt. No. 1 at

---

[3] The Court is unclear what specific accommodations Plaintiff requested and did not receive. Plaintiff suggests that she "asked Cornell to consider both her disability and NASA and medical professionals' recommendations to determine an appropriate plan forward during the investigation," Dkt. No. 4-4 at 11, but details only NASA and NSF's recommendations for her continued participation in field work pending investigation, Dkt. No. 30-1 at ¶ 63 ("[T]he recommendations of NASA and NSF . . . included 4-5 days of rest privately on station," that plaintiff "refrain from acting as bear guard and [consuming] alcohol," and otherwise "return to the team on March 30."), and not how Defendant should have incorporated those recommendations into its investigation once Plaintiff had returned to New York, *see generally* Dkt. Nos. 1, 4-4, and 30. At the Hearing, Plaintiff's counsel indicated that Plaintiff's only contemporaneous request was that her legal counsel be permitted to join her in her various interviews.

[4] The Court is again unclear what specific accommodations Plaintiff contends that Cornell should have offered or provided at this meeting, particularly in light of her counsel's representation at the Hearing that Plaintiff's only contemporaneous request for accommodations had been her request to be accompanied by counsel during the investigatory process.

¶ 172. Plaintiff appealed both determinations; her appeal regarding the sexual harassment determination was denied, and her appeal as to the other finding of misconduct remains pending. Dkt. No. 30 at 8. Plaintiff remains on paid administrative suspension while the latter appeal remains pending. *Id.* Plaintiff contends that her administrative suspension has "imposed the same punitive restrictions on [her] employment as the disciplinary suspension," Dkt. No. 1 at ¶ 174, except that she continues to receive her full compensation, Dkt. No. 30-1 at ¶ 91.

As a result of her ongoing administrative suspension and potentially forthcoming disciplinary suspension, Plaintiff alleges that she has been replaced as Principal Investigator on all research grants from NASA to Cornell. Dkt. No. 30 at 8. She further alleges that she cannot participate in ongoing research opportunities, including the analysis of data collected at the Expedition, Dkt. No. 4-4 at 19, work on other ongoing research and applications for additional grants, *id.* at 21-22, including an unspecified "one-in-a-lifetime opportunity" with Great Britain, *id.* at 22; *see also* Dkt. No. 1 at ¶ 274, or attend the Josep Comas i Solà International Summer School in Astrobiology program for which she serves as a director, Dkt. No. 4-4 at 22-23. Plaintiff contends that grant donors, logistics providers, and program attendees will notice her absence from her work and upcoming events and might draw adverse conclusions about her fitness to perform future duties. *Id.* at 22-23. She further alleges that she is restricted from mentoring students at both Cornell and Georgia Tech with whom she has previously worked extensively, and that their research papers "presumably will not include her as an author" despite her contributions. *Id.* at 23. Plaintiff further alleges that she is unable to work on various research proposals that would fund her post-doctoral and graduate students' research.[5] *Id* at 21-23. She also alleges that she

[5] Plaintiff in her Motion papers refers to "proposals due in August" on which she could not work absent injunctive relief. *Id.* Plaintiff's counsel confirmed at the Hearing that the deadline for this proposal had passed.

"continues to be isolated from anyone from Cornell," which has caused her existing PTSD to "morp[h] into generalized anxiety and depression" that may continue to worsen without intervention, leading to "cognitive decline, memory loss, and shocks to her nervous system" as a result of her ongoing administrative suspension and potentially forthcoming disciplinary suspension. *Id.* at 19. Plaintiff further describes the lengthy and time-sensitive hiring process she would have to navigate if she relocates to a new university, noting that her particularized expertise and programmatic needs would further complicate a job hunt. *Id.* at 20-21. Plaintiff does not, however, appear to dispute Defendant's representation that, upon completion of her disciplinary suspension, Plaintiff will "be back at Cornell at the end of her leave." Dkt. No. 17 at 15.

### C. Plaintiff's Requested Injunctive Relief

Plaintiff requests that this Court enter an order (i) "staying the emergency suspension enacted against Plaintiff and reinstating [her] to her position in good standing" to allow her to resume her participation in all school activities; (ii) "enjoining Defendant from issuing or enforcing any further disciplinary action against Plaintiff as part of its investigations"; (iii) "directing Defendant to engage in the interactive process with Plaintiff, by and through her counsel, to provide her with proper disability accommodations and allow Plaintiff to adequately and fairly participate in the investigations and appeals currently pending"; and (iv) such further and other relief as the Court deems just. Dkt. No. 4 at 1.

## III. STANDARD OF REVIEW

A party seeking preliminary injunctive relief must establish: "(1) irreparable harm; (2) either a likelihood of success on the merits or both serious questions on the merits and a balance of hardships decidedly favoring the moving party; and (3) that a preliminary injunction is in the public interest." *N. Am. Soccer League, LLC v. U.S. Soccer Fed'n*, 883 F.3d 32, 37 (2d Cir. 2018).

"A preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a *clear showing*, carries the burden of persuasion." *Sussman v. Crawford*, 488 F.3d 136, 139-40 (2d Cir. 2007) (quoting *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997)). "Where there is an adequate remedy at law, such as an award of money damages, injunctions are unavailable except in extraordinary circumstances." *Moore v. Consol. Edison Co. of N.Y., Inc.*, 409 F.3d 506, 510 (2d Cir. 2005) (citations omitted). Further, a preliminary injunction is "never awarded as of right," *Ayco Co., L.P. v. Frisch*, 795 F. Supp. 2d 193, 200 (N.D.N.Y. 2011) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008)), and the decision to grant such relief "rests in the sound discretion of the district court[.]" *JSG Trading Corp. v. Tray-Wrap, Inc.*, 917 F.2d 75, 79 (2d Cir. 1990).

## IV. DISCUSSION

After a close review of the Complaint, the Motion, and the related submissions, the Court finds that Plaintiff has not met her burden to establish the irreparable harm necessary to warrant a preliminary injunction.

"The showing of irreparable harm is perhaps the single most important prerequisite for the issuance of a preliminary injunction[.]" *Kamerling v. Massanari*, 295 F.3d 206, 214 (2d Cir. 2002) (internal quotation marks and citation omitted). The Second Circuit defines irreparable harm as "certain and imminent harm for which a monetary award does not adequately compensate." *Wisdom Imp. Sales Co., LLC v. Labatt Brewing Co., Ltd.*, 339 F.3d 101, 113 (2d Cir. 2003) (citations omitted); *see also Tom Doherty Assocs., Inc. v. Saban Ent., Inc.*, 60 F.3d 27, 37 (2d Cir. 1995) (noting that "[i]rreparable harm is an injury that is not remote or speculative but actual and imminent, and for which a monetary award cannot be adequate compensation") (internal quotation marks and citations omitted). Additionally, the irreparable harm must be preventable by the

injunction, *i.e.*, Plaintiff must show that she will be irreparably harmed if the Court does not grant the requested preliminary injunction. *See Doe v. Quinnipiac Univ.*, No. 17-cv-364, 2017 WL 1206002, at *5 (D. Conn. Mar. 31, 2017) (citations omitted).

Here, Plaintiff identifies three harms that she contends are irreparable absent the issuance of a preliminary injunction and are not compensable by monetary damages alone: (i) reputational harm; (ii) delayed and foregone research opportunities; and (iii) mental health injury. Dkt. No. 4-4 at 19-25.

As an initial matter, Defendant contends that certain of Plaintiff's alleged harms have already occurred and cannot be prevented by injunctive relief. Dkt. No. 17 at 17. The Court agrees. To the extent that Plaintiff alleges harms based on her isolation from her team in Greenland and her inability to participate in the remainder of the Expedition, Dkt. No. 4-4 at 19, those harms were complete, respectively, the day Plaintiff returned to New York and the day the rest of her team completed the Expedition, *see O'Shea v. Littleton*, 414 U.S. 488, 495-496 (1974) ("Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief, however, if unaccompanied by any continuing, present adverse effects"). Plaintiff cannot logically "show that, on the facts of [her] case, the failure to issue an injunction would actually cause" these past harms. *Salinger v. Colting*, 607 F.3d 68, 82 (2d Cir. 2010).

**1. Reputational Harms**

Plaintiff's argument that her reputation will be irreparably harmed in the absence of a preliminary injunction is unavailing. Generally, a claim that one's "reputation would be damaged as a result of [adverse employment action] falls far short of the type of irreparable injury which is a necessary predicate to the issuance of a temporary injunction." *Sampson v. Murray*, 415 U.S. 61, 91-92 (1974); *see also Stewart v. U.S. I.N.S.*, 762 F.2d 193, 200 (2d Cir. 1985) (finding that

plaintiff's "degrad[ation] and humiliat[ion] in the eyes of his peers, family, and community" following his indefinite suspension without pay pending resolution of criminal charges, which "damag[ed] his reputation and self-esteem," did "not constitute irreparable harm sufficient to justify injunctive relief."); *Guitard v. United States Sec'y of Navy*, 967 F.2d 737, 742 (2d Cir. 1992) (finding that plaintiff's "loss of reputation, loss of income and difficulty in finding other employment" following his military discharge did "not constitute the irreparable harm necessary to obtain a preliminary injunction"); *Oliver v. New York State Police*, No. 115-CV-00444 (BKS/DJS), 2019 WL 2009182, at *8 (N.D.N.Y. May 6, 2019), *aff'd*, 812 F. App'x 61 (2d Cir. 2020) (finding that plaintiff's "inability to secure employment" in her field and the "stigma of job loss" were insufficient, "alone or in combination" with other asserted employment-related losses, to constitute irreparable injury).

Nevertheless, the Supreme Court has recognized that injunctive relief may be available in a "genuinely extraordinary situation," where the "circumstances surrounding an employee's discharge, together with the resultant effect on the employee, may so far depart from the normal situation that irreparable injury might be found." *Sampson*, 415 U.S. at 92, n.68. Indeed, Plaintiff's reputation both in and beyond the scientific community might present such a situation. *See, e.g.*, BLAVATNIK AWARDS FOR YOUNG SCIENTISTS, *Britney E. Schmidt*, https://blavatnikawards.org/honorees/profile/britney-e-schmidt/ (last visited Nov. 13, 2026) (identifying Plaintiff as the winner of the 2024 national Blavatnik award for faculty, in recognition of her contributions to "climate science and planetary habitability studies"); Aryn Baker, *The 100 Most Influential People of 2023: Britney Schmidt and Peter Davis*, TIME, Apr. 13, 2023.

The Court need not decide whether Plaintiff's reputation is sufficiently extraordinary, however, because her predictions of lost reputation are too speculative and conclusory to establish

irreparable reputational harm. *See TVC Albany, Inc. v. Am. Energy Care, Inc.*, No. 1:12-CV-1471 MAD/CRH, 2012 WL 5830705, at *6 (N.D.N.Y. Nov. 16, 2012) ("[B]road allegations concerning [Plaintiff's] potential loss of reputation" are insufficient to "demonstrat[e] the likelihood of irreparable harm necessary to warrant" injunctive relief); *Alzheimer's Found. of Am., Inc. v. Alzheimer's Disease & Related Disorders Ass'n, Inc.*, No. 10-cv-3314, 2015 WL 4033019, at *11 (S.D.N.Y. June 29, 2015) ("[C]onclusory statements of loss of reputation will not justify an irreparable harm finding"). Plaintiff alleges without detail that "Cornell is . . . annihilating [her] relationships" with research grant donors, and that "she is concerned that [Cornell's] decision [to place other researchers in charge of certain research grants] will hurt those who entrusted her with the funding," in part because the stewards serving in her stead will "*potentially* wast[e] and spen[d] money that Plaintiff would not consent to if she were in control of the funds' allocation and use." Dkt. No. 4-4 at 21 (emphasis added). Plaintiff neither identifies specific donors whose opinion of her has declined nor explains how her suspension has caused that decline. *See id.* And she does not describe any specific decision another researcher stewarding these grants has or is likely to make with grant money, nor explain why such an imprudent expenditure could not be remedied by monetary damages. *See id.* She similarly offers no detail as to what her "work with Great Britain" would entail, how her collaborators in that work might learn of her suspension or otherwise arrive at an adverse view of her, or why that work is a "once-in-a-lifetime opportunity." *Id.* at 22. Her allegation that "those who provide logistics for these expeditions" came to believe that she "must be unsafe in some way" similarly fails to describe specifically who harbors this belief, how they reached that conclusion, or why an injunction would disabuse them of that notion. *Id.*

Plaintiff's allegations regarding the Josep Comas i Solà International Summer School in Astrobiology, for which she serves as U.S. Director, present a closer question. *See id.* She identifies a specific organization and why its participants are likely to note her absence from the camp. *Id.* But her prediction of harm is merely that attendees will be "left wondering what could have happened for her to miss the camp." *Id.* at 22-23. She offers no explanation as to why they would conclude that her anticipated absence would reflect poorly upon her, and the Court cannot find irreparable harm on this speculative basis.

Plaintiff's remaining allegations regarding her reputation, including that unspecified "[o]rganizations and individuals within Cornell have been forced not to engage with her," that the damage has somehow "extended . . . [to] other institutions, specifically Georgia Tech," *id.* at 19, and that her mentees "presumably will not include her as an author" on their papers, *id.* at 23, are similarly too vague and conclusory to warrant a preliminary injunction, *see Shepard Indus., Inc. v. 135 E. 57th St., LLC*, No. 97 CIV. 8447 (DAB), 1999 WL 728641, at *8 (S.D.N.Y. Sept. 17, 1999) (holding that "conclusory statements of loss of reputation . . . constitute an insufficient basis for a finding of irreparable harm.").[6]

**2. Research Interruptions**

Plaintiff's allegations regarding her inability to conduct research are similarly insufficient to establish irreparable harm. Defendant directs the Court to *Ahmad v. Long Island Univ.*, 18 F. Supp. 2d 245 (E.D.N.Y. 1998), to support its argument that "[a] threat of termination and preclusion of a professor from research at a university are not irreparable harm." Dkt. No. 17 at 13. In *Ahmad*, the university defendant informed the plaintiff professor that it intended to

[6] Moreover, it is unclear how an injunction preventing Cornell from suspending Plaintiff would remedy her inability to work with, or receive credit for papers published by, Georgia Tech students.

terminate his employment after an unsuccessful tenure application; the plaintiff sought an injunction preserving his employment while he litigated his discrimination claim. *Ahmad*, 18 F. Supp. 2d. at 246. The *Ahmad* court rejected the plaintiff's argument that his "reputation in the teaching community [would] be damaged beyond repair and his research and work . . . [would] be needlessly delayed and may even cease," reasoning that he was "not precluded from seeking other employment, and continuing his research and teaching elsewhere," and that "[w]ith reasonable certainty, he [would] continue to practice his learned profession," in denying injunctive relief. *Id.* at 247-248. Plaintiff, in reply, distinguishes *Ahmad* from this case, noting her "significantly particularized and specialized" field of study, the correspondingly limited number of institutions adequate to support her work, and the fact that she has not been terminated. Dkt. No. 30 at 9-10. The fact that Plaintiff has not been terminated, however, counsels against finding irreparable harm. Contrary to her assertion that she is on an "open-ended emergency suspension," Dkt. No. 30 at 9, it appears to the Court that in fact Plaintiff's administrative suspension will persist only for the duration of her remaining appeal, *see* Dkt. No. 1 at ¶ 182, which Defendant at the Hearing represented to the Court is nearing the deadline for resolution pursuant to Cornell's internal grievance timeline. If Plaintiff's appeal is unsuccessful, Plaintiff will thereafter begin a finite disciplinary suspension, *see* Dkt. No. 4-4 at 15-16, after which Defendant has represented that Plaintiff will return to work at Cornell, Dkt. No. 17 at 15. The fact that she ultimately has the right to remain at Cornell, moreover, undermines her argument that she is irreparably harmed because she would face difficulties if she chose to relocate to a new university.

*Joshi v. Trs. of Columbia Univ. in City of New York* is perhaps more instructive. No. 17-CV-4112 (JGK), 2020 WL 5125435 (S.D.N.Y. Aug. 31, 2020). In *Joshi*, the plaintiff alleged that the university defendant undertook to close his laboratory in retaliation for a complaint of research

misconduct that the plaintiff had submitted, and following a human resources complaint against the plaintiff submitted by his laboratory technician. *Joshi*, 2020 WL 5125435, at *2. The defendant, for its part, attributed the closure to a lack of external funding. *Id.* Recognizing the considerable efforts the plaintiff had expended in "carefully acquir[ing] and calibrat[ing] his equipment over more than two decades," *id.* at *4, and that "[c]losing [the plaintiff's] lab . . . would cause the lab to lose its New York State certification for narcotic storage and use," *id.* at *3, the *Joshi* court nevertheless found that the plaintiff's inability to "continue to do new research [was] not an irreparable injury," *id.* at *5. The court reasoned that the plaintiff could continue his research if he were able to secure additional funding in the future and noted that he "maintain[ed] his employment" at the university. *Id.* Plaintiff similarly remains employed by Cornell and will be able to resume her research following her suspension, so long as she is similarly able to secure further funding. *See* Dkt. No. 30 at 9 (noting that Plaintiff has not been terminated); Dkt. No. 4-4 at 21-22 (noting Plaintiff's dependence upon external funding to continue her research). Plaintiff's inability to conduct research under the grants Cornell has heretofore received is accordingly insufficient to show irreparable harm, particularly given that others at the university continue to ensure that the work is not interrupted. Just as the plaintiff in *Joshi* could weather the delay in his research and seek new funding down the line, so too can Plaintiff resume her research after her suspension and, if necessary, apply for further grants to secure future support. *See Joshi*, 2020 WL 5125435 at *5.

Plaintiff further identifies a particular "proposal that, if executed properly, would result in three years of funding" for her research, which Plaintiff cannot revise, in support of her contention that the interruption to her work will "have lasting impacts for years down the road." Dkt. No. 4-4 at 21-22. Plaintiff urges that the ice shelf upon which she plans to conduct this research "may

cease to be present if they do not go next year as it is literally melting." *Id.* at 22. While Plaintiff's argument suggests a degree of urgency not present in *Ahmad* or *Joshi*, the Court nevertheless notes that Plaintiff's assertion of irreparable harm rests on speculation. Plaintiff's own account of the urgency of this research posits only that the ice shelf "*may* cease to be present," with neither scientific citation nor explanation of the likelihood of its complete disappearance. *Id.* (emphasis added). Moreover, while the Court might presume that the universe of grants for which Plaintiff might apply is likely finite, Plaintiff says nothing about the existence or nonexistence of alternative research funding opportunities for which Plaintiff could apply following her suspension. *Id.* In light of Plaintiff's extensive experience across various regions, it is not clear to the Court that no other grants are available, such that her inability to work on any particular proposal will work an irreparable harm upon her career. *See* Dkt. No. 1 at ¶ 12 (noting Plaintiff's experience conducting "polar field expeditions to locations including Greenland, Antarctica, and the High Arctic"). Regardless, neither Plaintiff's Motion nor the Complaint includes allegations suggesting any unique, non-monetary component to the grant she seeks. *See generally* Dkt. No. 4-4 at 21-22 (describing the proposal as seeking "*funding* [that] would *pay* for a field campaign in Antarctica.") (emphasis added); Dkt. No. 1 at ¶ 273 (same). Plaintiff's inability to endeavor to secure research funding is accordingly the type of harm that can be remedied, should she ultimately prevail in her suit, by monetary damages. *See Wisdom Imp. Sales Co., LLC*, 339 F.3d at 113 (2d Cir. 2003) (defining irreparable harm as "certain and imminent harm for which a monetary award does not adequately compensate").

Plaintiff cites several cases in support of her contention that an academic interruption constitutes irreparable harm, all of which involve students facing distinguishable circumstances. *See* Dkt. No. 4-4 at 24 (collecting cases). The students in Plaintiff's cited cases established that

they were likely to completely miss out on their respective abilities to pursue their chosen career or attend college altogether, or that they would incur actual gaps in their educational or employment histories that they would have to explain to future employers. *See Coleman v. Newburgh Enlarged City Sch. Dist.*, 319 F. Supp. 2d 446, 452-453 (S.D.N.Y. 2004) (holding that special needs high school student who would be suspended from his special education program, likely lose out on existing university scholarship and admissions offers, and miss the opportunity to qualify for the 2004 Summer Olympics had established irreparable harm); *Maczaczyj v. State of N.Y.*, 956 F. Supp. 403, 407-408 (W.D.N.Y. 1997) (holding that student in master's program who would "not be able to participate in [his current] or any other masters program" absent accommodation to participate remotely had satisfied irreparable harm requirement); *Doe v. Middlebury Coll.*, No. 1:15-CV-192-JGM, 2015 WL 5488109, at *2-3 (D. Vt. Sept. 16, 2015) (finding that rising college senior with job offer contingent upon graduation and completion of internship during the prior summer faced irreparable harm from suspension); *Phillip v. Nat'l Collegiate Athletic Ass'n*, 960 F. Supp. 552, 558 (D. Conn. 1997) (finding that college basketball student-athlete established likelihood of irreparable harm where, if defendant rendered him ineligible to receive his athletic scholarship, he would be financially unable to remain at university, resulting in delay, "perhaps for years," of his education). Plaintiff, in contrast, will remain employed by Cornell after her suspension is complete, and offers no reason to believe she would have to disclose her suspension to any future employers. *See* Dkt. No. 30 at 9 (conceding that Plaintiff "has not been formally terminated"); Dkt. No. 17 at 15 (representing that Plaintiff will remain employed after her leave). Moreover, Defendant represented at the Hearing that Plaintiff

continues to receive credit for ongoing research.[7] Plaintiff accordingly will not have a gap in her research history to explain should she seek other employment.

### 3. Plaintiff's Mental Health

Plaintiff also alleges that her continued isolation from the Cornell community is likely to "exacerbate her diagnosis of PTSD," Dkt. No. 1 at ¶ 262, which her therapist predicts will cause "cognitive decline, memory loss, and shocks to her nervous system," Dkt. No. 1 at ¶ 264; *see also* Dkt. No. 4-4 at 19. A "significant negative impact on [a] plaintiff's mental health" can qualify as irreparable harm. *Maczaczyj*, 956 F. Supp. at 408. However, as Defendant points out, while Plaintiff's suspension prohibits her from engaging with Cornell students, faculty, and staff, she remains free to seek support and engagement from anyone outside of that community. *See* Dkt. No. 17 at 17. And while Plaintiff's counsel emphasized the emotional impact of the restrictions on Plaintiff's ability to perform her research and mentor her students, it is far from clear to the Court that Plaintiff's medical providers believe that these restrictions alone will cause the symptoms Plaintiff describes. *See* Dkt. No. 1 at ¶ 262 (noting that Plaintiff's medical professionals predict that "continued isolation *and* prohibition from duties with Cornell would be harmful . . .") (emphasis added); ¶ 264 (noting that "if the *isolation* continues, side effects will include cognitive decline, memory loss, and shocks to her nervous system.") (emphasis added); Dkt. No. 4-4 at 19

---

[7] Indeed, the Court has identified several publications which post-date the start of Plaintiff's suspension and for which she is listed as an author. *See, e.g.*, Emily R. Paris *et al.*, *Free-Living Autotrophs Drive a Carbon Fixation Peak Within the Orca Basin Chemocline While Heterotrophs Dominate Total Activity From Seawater to Brine*, THE ISME JOURNAL, Nov. 9, 2026 (listing as an author Dr. Britney E. Schmidt, "Departments of Astronomy & Earth and Atmospheric Sciences, Cornell University"); Lea A. Adepoju *et al.*, *Anaerobic Methane Oxidation by ANME-2a at 2 M Chloride in the Orca Basin Halocline*, BIORXIV, Oct. 24, 2026 (similar) (preprint); Luke A. Fisher *et al.*, *Adaptive Laboratory Evolution of* E. coli *to Magnesium Chloride Stress Reveals Noncanonical Routes to Broad Chaotropic Salt Resistance*, FRONTIERS MICROBIOLOGY, July 22, 2026 (similar).

(attributing these harms to "isolation *and* refraining from her duties with Cornell . . .") (emphasis added). Based upon Plaintiff's recitation of her medical providers' conclusions, it appears that her medical providers attribute her risk of mental health decline to a degree of isolation not fairly traceable to Defendant's conduct. Such a risk of harm cannot provide the basis for a preliminary injunction. *See Schroedel v. New York Univ. Med. Ctr.*, 885 F. Supp. 594, 598 (S.D.N.Y. 1995) (noting that "the moving party must demonstrate that a defendant's conduct is *causing* irreparable harm") (citing *Levin v. Harleston*, 966 F.2d 85, 90 (2d Cir. 1992)) (emphasis added); *Weiser v. Koch*, 632 F. Supp. 1369, 1373 (S.D.N.Y. 1986) ("[T]here must be sufficient immediacy, reality and causality between defendants' conduct and plaintiffs' allegations of future injury to warrant declaratory and injunctive relief . . . .") (citing *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983)).

* * *

Because a "finding of no showing of irreparable harm is dispositive," *Grand River Enter. Six Nations, Ltd. v. Pryor*, 481 F.3d 60, 68 (2d Cir. 2007), the Court need not address the remaining factors, including whether Plaintiff is likely to succeed on the merits of her claims. *See, e.g.*, *Harley Marine NY, Inc. v. Moore*, No. 23-cv-163, 2023 WL 3620720, at *9 (N.D.N.Y. Mar. 24, 2023) (declining to address the remaining elements necessary to obtain injunctive relief where the plaintiff failed to demonstrate the probability of irreparable harm); *see also JBR, Inc. v. Keurig Green Mountain, Inc.*, 618 F. App'x 31, 36 (2d Cir. 2015) ("Because irreparable harm is the '*sine qua non* for preliminary injunctive relief,' we conclude that [plaintiff's] motion for a preliminary injunction fails at the irreparable harm stage, and we do not reach the other components of the preliminary injunction inquiry.") (citation omitted).

Accordingly, given that Plaintiff has failed to make the requisite showing as to irreparable

harm, Plaintiff's Motion is denied.

## V. CONCLUSION

Accordingly, the Court hereby

**ORDERS** that Plaintiff's Motion for a Preliminary Injunction, Dkt. No. 4, is **DENIED**; and the Court further

**ORDERS** that the Clerk serve a copy of this Memorandum-Decision and Order on the Parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: November 16, 2026
Albany, New York

Anne M. Nardacci
U.S. District Judge